FILED

2017 JUL 25 PM 3: 45

CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | I N F O R M A T I O N |
| ) | |
| Plaintiff, ) | 5:17 CR 288 |
| ) | |
| v. ) | CASE NO.: JUDGE GWIN |
| ) | Title 18, United States Code, |
| TIMOTHY E. McSHANE, ) | Sections 1343 & 2 |
| ) | |
| Defendant. ) | |

The United States Attorney charges:

## GENERAL ALLEGATIONS

At all times material and relevant to this Information:

**A.  The Defendant and His Business Entities**

1. The defendant TIMOTHY E. McSHANE was a resident of Stow, Ohio and Akron, Ohio, which are located in the Northern District of Ohio, Eastern Division.

2. McSHANE established McShane Construct All International, LLC ("MCAI"), an Ohio limited liability corporation with its principal place of business in Stow, Ohio, in March 2006. MCAI conducted construction related business in Ohio and New Mexico. McSHANE held the title of owner and was familiar with all aspects of its operations.

3. McSHANE established and caused to be established several other corporations in New Mexico and Nevada between July 2008 and April 2012, including Rancho Hidalgo, LLC ("RH"), Lordsburg Land Development, LLC ("LLD"), Hidalgo Alfalfa Company, LLC

("HAC"), New Mexico Natural Beef & Pork, LLC ("NMN"), and Firewater Hydrogen Fuel, LLC ("FHF) (collectively, the "Companies").

4. E.T., an individual known to the United States Attorney, was a resident of Animas, New Mexico.

**B.   The Scheme**

5. Between approximately February 2008 and January 2013, McSHANE, together with E.T., solicited investments in the Companies on a "private placement" basis in which McSHANE and E.T. gave investors promissory notes and/or founder's shares of stock in one of Companies, which were not registered with the SEC nor traded on any public stock exchange.

6. McSHANE, E.T., and others known to the United States Attorney gave investors approximately $2,300,000 worth of promissory notes in exchange for their investments in RH, HAC, NMN, and sold approximately $341,000 worth of founders' shares of FHF.

7. McSHANE and E.T. provided investors promissory notes in which they guaranteed a specific rate of return and/or a return based on profitability and payable on a set schedule, typically quarterly.

8. McSHANE and E.T. collateralized investments in the Companies with assets (e.g., land pledges, crop pledges, cattle pledges, water rights pledges, and real property) purportedly belonging to the Companies.

9. McSHANE and E.T. devised a scheme to defraud investors by inducing them to invest in the Companies through materially false and fraudulent misrepresentations and omissions of material facts about the Companies' financial condition, collateral, and the nature

and disposition of the investors' money. Such representations and omissions included, but were not limited to, the following:

    a. Between approximately February 2008 and approximately January 2013, McSHANE and E.T. fraudulently represented to investors that investment proceeds were to be applied solely and exclusively to costs associated with the operations of the specific company in which they invested, when in fact, as McSHANE and E.T. then well knew, it was commingled, diverted for other projects, and used personally.

    b. Between approximately February 2008 and approximately January 2013, McSHANE and E.T. fraudulently represented to new investors that they were going to pay a guaranteed rate of return when in fact, as McSHANE and E.T. then well knew, they were not paying existing investors the promised returns.

    c. Between approximately February 2008 and approximately January 2013, McSHANE and E.T. fraudulently misrepresented to investors their ownership of collateral that was intended to secure their investments, when in fact, as McSHANE and E.T. then well knew, the collateral was already double collateralized or sold.

    d. Between approximately February 2008 and approximately January 2013, McSHANE and E.T. fraudulently misrepresented to investors the financial conditions of the Companies, their current profitability, and their future prospects, when in fact, as McSHANE and E.T. then well knew, the Companies were consistently losing money.

10. McSHANE and E.T. used the personal, social, and business relationships of current investors to establish relationships of trust and to find additional prospective investors.

11. McSHANE and E.T. touted the reputations and backgrounds of certain individuals that were experts in their fields and falsely stated that they were working for the Companies.

12. McSHANE and E.T. made false encouraging statements about the progress of the Companies to lull investors into a false sense of security, to encourage additional investments, and to prevent investors from requesting their money back or going to the authorities.

13. McSHANE and E.T. misused funds from new investors to make small payments to other investors who had complained about the lack of return on their investment.

14. McSHANE and E.T. misused investor funds while continuing to solicit new investors, including misappropriating investor funds for personal use and for projects unrelated to the investment.

15. McSHANE controlled the MCAI bank accounts from which investor funds were misappropriated by McSHANE and E.T.

16. McSHANE, E.T., and others known to the United States Attorney controlled the bank accounts associated with the Companies from which investor funds were misappropriated by McSHANE and E.T.

C. **Representative Misappropriation of Investor Funds**

17. On or about October 2, 2009, McSHANE deposited and caused to be deposited $24,000 into the MCAI bank account that he received from an investor in HAC known to the United States Attorney as W.S.

18. W.S. did not authorize McSHANE to use his investment funds to pay McSHANE's construction company debts, personal expenditures, or make payments to existing investors in other Companies.

19. Between on or about October 2, 2009 and October 13, 2009, McSHANE made and caused to be made 51 transactions from the MCAI bank account totaling approximately $30,945, for cash withdrawals, personal expenditures, unrelated construction business expenditures of MCAI, and payments to investors in other Companies that were not authorized by investor W.S.

20. On or about August 13, 2010, McSHANE deposited and caused to be deposited $70,000 into the HAC bank account that he received from an investor in HAC known to the United States Attorney as W.S.2.

21. W.S.2 did not authorize McSHANE to use his investment funds to pay McSHANE's unrelated MCAI debts, personal expenditures, or make payments to existing investors in other Companies.

22. On or about August 13, 2010, McSHANE transferred and caused to be transferred $25,000 into the MCAI bank account.

23. Between on or about August 13, 2010 and August 16, 2010, McSHANE made and caused to be made 16 transactions totaling approximately $24,057 for cash withdrawals, personal expenditures, unrelated MCAI construction business expenditures, and payments to investors in other Companies that were not authorized by investor W.S.2.

24. On or about July 20, 2011, McSHANE deposited and caused to be deposited $30,000 into the MCAI bank account that he received from an investor in HAC known to the United States Attorney as A.U.

25. A.U. did not authorize her funds to be used to pay McSHANE's unrelated MCAI debts, personal expenditures, or make payments to existing investors in other Companies.

26. Between approximately July 20, 2011 and July 26, 2011, McSHANE made and caused to be made 58 transactions totaling approximately $32,965 for cash withdrawals, personal expenditures, construction business expenditures, payments to investors in other Companies, and transfers to other McShane controlled accounts that were not authorized by investor A.U.

27. On or about May 10, 2012, McSHANE deposited and caused to be deposited $69,500 into the MCAI bank account that he received from an FHF investor known to the United States Attorney as M.K.

28. M.K. did not authorize his funds to be used to pay McSHANE's unrelated MCAI debts, personal expenditures, or make payments to existing investors in other Companies.

29. Between approximately May 10, 2012 and May 16, 2012, McSHANE made and caused to be made 63 transactions totaling approximately $92,198 for cash withdrawals, personal expenditures, construction business expenditures, and transfers to other McSHANE controlled accounts that were not authorized by investor M.K.

30. On or about August 2, 2012, McSHANE deposited and caused to be deposited $100,000 into the MCAI bank account that he received from an FHF investor known to the United States Attorney as S.G.

31. S.G. did not authorize his funds to be used to pay McSHANE's unrelated MCAI debts, personal expenditures, or payments to preexisting investors on other failed projects.

32. Between approximately August 2, 2012 and August 20, 2012, McSHANE made and caused to be made 109 transactions totaling approximately $101,683 for cash withdrawals, personal expenditures, unrelated MCAI debts, expenditures related to previously failed projects, payments to existing investors in other Companies, and transfers to other McSHANE controlled accounts that were not authorized by investor S.G.

33. Between in or around February 2008 and in or around January 2013, as a result of the foregoing scheme, which involved ten or more victims, investors in the Companies incurred a combined out-of-pocket loss of more than approximately $2,641,000. In addition, investors in

6

the Companies did not receive the interest payments McSHANE and E.T. guaranteed or the investment gains that McSHANE and E.T. falsely promised during the scheme.

The United States Attorney further charges:

## COUNT 1
### (Wire Fraud, 18 U.S.C. §§ 1343 & 2)

34. The factual allegations of paragraphs 1 through 33 of this Information are realleged and incorporated by reference as if fully set forth herein.

### The Scheme to Defraud

35. From in or around February 2008 to in or around January 2013, in the Northern District of Ohio, Eastern Division, and elsewhere, Defendant TIMOTHY E. McSHANE devised and intended to devise a scheme and artifice to defraud and obtain money and property from investors, by means of false and fraudulent pretenses, representations, and promises, and aided and abetted others in the same.

### The Use of Interstate Wire Communications

36. On or about the dates set forth below, in the Northern District of Ohio and elsewhere, McSHANE, for the purpose of executing and attempting to execute the scheme and artifice to defraud described above, transmitted and caused to be transmitted by means of wire communication in interstate commerce, writings, signs, signals, pictures and sounds, to wit: On or about August 2, 2012, an investor known to the United States Attorney as S.G., sent a wire transfer totaling approximately $100,000 to an MCAI bank account that McSHANE controlled.

37. As a result of the foregoing scheme, investors incurred substantial out-of-pocket and other losses.

All in violation of Title 18, United States Code, Sections 1343 and 2.

                              DAVID A. SIERLEJA
                              Acting United States Attorney

By: *Ann C. Rowland*
      Ann C. Rowland, Deputy Chief
      Criminal Division

8